UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Michigan Spine and Brain Surgeons, PLLC
a Michigan limited liability company (Sturgeon),

    Plaintiff,

v.

Oakwood Healthcare, Inc., a Michigan healthcare
facility, as Plan Administrator For The Oakwood
Healthcare Employees Medical Plan, an ERISA Plan,

    Defendant.

_____/

BRYAN L. SCHEFMAN (P35435)
LAW OFFICE OF BRYAN L. SCHEFMAN
Attorney for Plaintiff
40900 Woodward Ave., Ste. 111
Bloomfield Hills, MI 48304
(248) 594-2600 telephone
bryan@schefmanlaw.com

_____/

## Complaint

Plaintiff Michigan Spine and Brain Surgeons, PLLC, represented by its attorney Bryan L Schefman, PC, states:

## Jurisdiction and Venue

1. This is a civil complaint brought under the laws governing ERISA §502, 29 USC 1132, and federal common law, regarding breach of the terms of an employee benefit plan and breach of fiduciary duty, for the purpose of compelling Defendant to reimburse and pay lawfully incurred and submitted invoices for certain health care benefits provided for a duly enrolled beneficiary enrolled in the ERISA Plan in question, and for payment in the amounts and at the coverage levels promised, and for recovery of damages, costs, and attorney fees incurred as a consequence of Defendants' failure to do so.

2. Plaintiff has standing to bring this action as a derivative beneficiary by virtue of its status as the assignee/subrogee of Defendant's beneficiary, Sharon Sturgeon, an enrolled employee beneficiary, who is a patient of Plaintiff and who received medical services according to the terms of the ERISA Plan as herein set forth.

3. This Court has jurisdiction pursuant to ERISA §§502(e)(1), (f), 29 USC 1132(e)(1), (f), and 28 USC 2201.

4. The Defendant does business in the State of Michigan. Venue properly lies in this District pursuant to ERISA §502(e)(2), 29 USC 1132(e)(2) and 29 U.S.C. § 1132 (f).

5. Damages in this matter total $43,385.00

## Parties and Common Allegations

6. Sharon Sturgeon is an employee of Oakwood Healthcare ("Oakwood"), and was at all times relevant, a participant within the meaning of ERISA §3(7), 29 USC 1002(7), in a welfare benefit plan called "The Oakwood Healthcare Employees Medical Plan" ("Plan" or "OHEMP") by virtue of that employment.

7. Oakwood Healthcare is in the business of providing healthcare services in hospital and hospital owned medical professional practice settings, in the southeastern region of Michigan.

8. The Plan was established and is maintained by Oakwood, Sturgeon's employer, for the purpose of providing for its participants or their beneficiaries medical, surgical, or hospital care or treatment by the benefits outlined in the Plan, by funding OHEMP, a self-insured benefit plan.

9. Michigan Spine and Brain Surgeons, PLLC, ("MSBS") is a Michigan limited liability company doing business in Southfield Michigan, and at other hospital and office locations in Michigan, and at all times was composed of licensed professional healthcare providers who specialize in neurosurgical care. MSBS provided medical and neurosurgical services to the Plan's beneficiary, Sharon Sturgeon, and is the subrogee and assignee of all rights to payment for the services provided by agreement with the Plan's beneficiary, Sharon Sturgeon, and stands in the shoes of the Beneficiary for all purposes of payment under the terms of the Plan.

10. The medical care provided, and all charges tendered for payment thereby, was within the terms and benefits authorized under the plan, such that the Plan is obligated to make payment according to its terms.

11. All invoiced care provided was authorized by the Defendant prior to care delivery.

12. Defendant Plan is a welfare benefit plan within the meaning of ERISA §3(1), 29 USC 1002(1). Defendant OHEMP issued the Plan to Oakwood.

13. Defendant OHEMP is a health care benefit plan that is and was at all material times doing business in this district, and is a fiduciary and administrator, within the meaning of ERISA §§3(16), 402(a)(2), 29 USC 1002(16), 1102(a)(2), with respect to the Plan. The Plan operates and conducts its business through its designated Third Party Administrator, NGS CoreSource, at its headquarters located in Clinton Township, Michigan, as agent for the Plan Administrator.

14. On November 8-11, 2011, Sharon Sturgeon was admitted to Oakwood Hospital, a licensed tertiary hospital facility accredited by the Joint Commission on Accreditation of Healthcare Organizations (JCAHO), as a result of injuries sustained in an auto collision requiring hospitalization and treatment that included neurosurgical resection of her spine from levels L-3, L-4, L-5, S-1, laminectomy and fusion.

15. Plaintiff, by virtue of its Assignment by Subrogee Sturgeon, is entitled to payment of all medical professional fees incurred during that hospitalization as treatment as benefits due under the Plan.

16. Plaintiff did in all respects comply with all notice and pre-authorization requirements of the Defendant Plan, and obtained a pre-authorization code for payment from Defendant.

17. A claim for payment in the amount of $43,385.00, representing the professional charges for treatment, was submitted by MSBS to the Plan by way of its agent NGS CoreSource, and in accordance with the authorization, however the Plan, through its agent, has refused to make payment and reversed its position relative to the prior authorization.

18. After many conferences, by way of appeal, the Defendant Plan denied the claim, inviting this Plaintiff to file suit. A copy of the letter denying this portion of the claim is attached as Exhibit A.

19. The Defendant's determination was in part based upon one certain aspect of the Plaintiff's care, the use of "bone morphogenic protein" or "BMP" as a part of the procedure codes, indicating that this procedure was an experimental non-FDA approved professional service/technique.

20. Defendant denied the entire claim on the alleged basis that the BMP procedure was not FDA approved and therefore not reimbursable as being experimental. Defendant made no determination regarding the remaining balance of plaintiff's claim for services, which services were

in all respects accepted procedures by FDA and universally accepted as standard of care for neurosurgeons treating conditions such as Sturgeon presented with.

21. Both the appeal process and the general attempts at resolution of this claim have exhausted plaintiff's administrative remedies. Any further administrative proceedings would be futile.

22. Despite plaintiff's demands for payment and reimbursement, of even the undisputed portion, the Company has violated its duties to plaintiff in failing to reimburse or provide payment or an accounting regarding his health care benefits.

## Count I

## Action Under ERISA §502(a)(1)(B), 29 USC 1132(a)(1)(B), to Recover Benefits

23. Plaintiff incorporates paragraphs 1 through 22 by reference.

24. The refusal to reimburse or pay Plaintiff's health care benefits was in direct violation of the terms of the Plan vis-à-vis its enrollees and beneficiaries and as to its physician contracted providers.

25. The Company's failure to provide plaintiff's benefits under the Plan, and in refusing to render an accounting of such benefits, and to pay for all undisputed compliant services, were a violation of all of Defendant's fiduciary duties set forth above.

## Count II

## Action Under ERISA §502(a)(3), 29 USC 1132(a)(3), to Remedy Breach of Fiduciary Duty

26. Plaintiff incorporates paragraphs 1 through 15 by reference.

27. Pursuant to ERISA §404(a), 29 USC 1104(a), as fiduciary with respect to the Plan, the Company has and had a duty to discharge its duties with respect to the Plan solely in the interest of the Plan participants and their beneficiaries, and

   a. for the exclusive purpose of providing benefits to Plan participants, and their beneficiaries (and by way of assignment and subrogation); and

   b. with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims; and

   c. in accordance with the Plan documents and instruments insofar as such documents and instruments are consistent with the provisions of Titles I and IV of ERISA.

28. The Defendant's failure to provide plaintiff's benefits under the Plan, and in refusing to render an accounting of such benefits constitute a violation of all of its fiduciary duties set forth herein and within the Plan.

## Count III

## Breach of Contract

29. Plaintiff incorporates paragraphs 1-28 by reference.

30. Plaintiff was a contracted provider of medical services pursuant to a contract as a member with the provider network of Defendant.

31. The terms of the contract call for payment for the services rendered and in the manner undertaken herein.

32. Defendant has failed and refused to pay under the terms of the contract and has therefore breached the contract and is indebted to the Plaintiff for that breach and all damages incurred as a result.

33. Plaintiff has suffered damages in medical costs for time and services expended without compensation in the amount of $43,385.00.

## Relief Requested

PLAINTIFF REQUESTS that the Court grant the following relief:

A. An order compelling Defendant to pay Plaintiff forthwith the full amount of health care benefits due him and/or to be reimbursed to him, including interest on all unpaid benefits;

B. Reasonable attorney fees and costs, pursuant to ERISA §502(g)(1), 29 USC 1132(g)(1);

C. Such other relief as may be just and appropriate.

Respectfully submitted,

/s/ Bryan L. Schefman
BRYAN L. SCHEFMAN (P35435)
Attorney for Plaintiff
40900 Woodward Ave., Suite 111
Bloomfield Hills, MI 48304
(248) 594-2600
Dated: October 18, 2012        bryan@schefmanlaw.com

**CERTIFICATE OF SERVICE**

The undersigned certifies that a copy of the foregoing document was filed with the Clerk of the Court using the ECF system, which will serve all attorneys of record electronically at their email addresses listed with the Court.

/s/ Bryan L. Schefman

9

# EXHIBIT A



**NGS CoreSource**
*A Trustmark Company*
PERSONAL. FLEXIBLE. TRUSTED.

August 13, 2012

MICHIGAN SPINE AND BONE
22250 PROVIDENCE DR
SOUTHFIELD, MI 48075

Employee:       Sharon Sturgeon
Employer:       Oakwood Hospital
Date of Service: 11/08/11-11/11/11
Patient:        Sharon Sturgeon

Dear Provider:

This is in response to your appeal regarding the denial of benefits for services rendered on the above mentioned patient on the above mentioned dates of service.

NGS CoreSource is a licensed third party administrator for the single employer self-funded plan sponsored by Oakwood Healthcare and is only authorized to process claims in accordance with the specific plan guidelines provided by the Plan Administrator, Oakwood Healthcare.

Under the terms of The Oakwood Healthcare Employees Medical Plan, page 15, a procedure, service or supply is deemed to be medically necessary when it is for the treatment of an illness or injury; it is prescribed by a physician and is professionally accepted as the usual, customary and effective means of treating a condition. Diagnostic x-rays and laboratory tests that are performed due to definite symptoms of illness or injury or reveal the need for treatment will be considered medically necessary. In the evaluation of medical necessity, the plan may request records that, if legally required to be maintained, must be made available to the plan in order to consider the expenses. The plan may also seek outside medical opinions from appropriate board certified specialists. The plan reserves the right to have the right to the patient examined by an independent specialist in the appropriate field of medicine. According to page 17 of the plan, this plan shall use the following guidelines to determine that a drug, device, medical treatment or procedure is experimental or investigational: 1. The procedure, drug or device cannot be lawfully marketed without approval of the U.S. FDA and approval for marketing has not been given at the time the drug or device is furnished or the drug or device has been granted FDA approval solely as a humanitarian exemption. Certain off label uses of a drug that is otherwise FDA approved may be considered non-experimental, as set forth under "Off Label Use" below. In any event, any drug, medical device or biological product which the FDA has determined to be contraindicated for the specific treatment for which the drug has been prescribed will be considered experimental/investigational; or 2. The drug or drug therapy, device, or procedure was reviewed and approved for experimental/investigational use by the treating facility's institutional review board (IRB), if federal law requires such a review or approval; or the patient is participating in a Phase I, II or III clinical trial; or 3. Reliable Scientific Evidence (RSE) *indicates* that the prevailing opinion among experts regarding the drug or drug therapy, device or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy, or its efficacy as compared with a standard means of treating the diagnosis.

19800 Hall Road, Clinton Twp., Michigan 48038
P.O. Box 2310, Mt. Clemens, Michigan 48046



**NGS CoreSource**
*A Trustmark Company*
PERSONAL. FLEXIBLE. TRUSTED.

Page 2
Sharon Sturgeon
Oakwood HealthCare

**Off-Label Use**
Once FDA approval has been granted for a drug or biological product for use in the treatment of a particular diagnosis or condition, use of the drug or biological product for another diagnosis or condition will require that use of that drug or biological product be recognized as medically appropriate and generally accepted by one or more of the following: The American Hospital Formulary Service Drug Information or other major drug compendia.

Reliable scientific evidence means: Peer-reviewed scientific studies published in or accepted for publication by medical journals that meet nationally recognized requirements for scientific manuscripts and that submit most of their published articles for review by experts who are not part of the editorial staff. Peer reviewed literature, biomedical compendia, and other medical literature that meet the criteria of the National Institute of Health's National Library of Medicine for indexing in index Medicus, Excerpta Medicus (EMBASE), Medline, NCCN, or Medlars database Health Services Technology Assessment Research (STAR).

Pages 67and 68 of the plan specifically excludes services which are considered experimental/investigational and those which are considered not medically necessary.

The additional information submitted with your appeal has been reviewed by a Board Certified independent Orthopaedic Surgeon. There is no instability at L4-5 or L5-S1 to warrant fusion. Fusion is only medically necessary at L3-4 where spondylolishthesis is present. The use of bone morphogenetic protein (BMP) remains controversial and dosing, safety, and efficacy still need to be studied further. The additional information did not change the determination on the initial independent review. Based on this information and the specific plan exclusions of services not medically necessary and services which are considered experimental/investigational, it must be maintained that the original processing of the claim in question was appropriate and no adjustments are warranted.

It is regrettable that this response could not have been more favorable. The claimant is entitled to receive, upon request and free of charge, reasonable access to and copies of, all documents, records, and other information relevant to the claim. Additionally, the claimant has the right under Section 502(a) of the Employee Retirement Income Security Act of 1974, as amended, to bring civil action to recover benefits due under the terms of the Plan and seek other specified remedies.

Sincerely,

Allison W. Cox
Compliance Department

Cc: Sharon Sturgeon

19800 Hall Road, Clinton Twp., Michigan 48038
P.O. Box 2310, Mt. Clemens, Michigan 48046